UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RED EARTH LLC d/b/a
SENECA SMOKESHOP and
AARON J. PIERCE,

                         Plaintiffs,

                                              **PRELIMINARY
                                              INJUNCTION ORDER**
              v.                              10-CV-530A

UNITED STATES OF AMERICA and
ERIC H. HOLDER, JR., in his Official
Capacity as Attorney General of the
United States,

                         Defendants.

SENECA FREE TRADE ASSOCIATION,

                         Plaintiff,

                                              **PRELIMINARY
                                              INJUNCTION ORDER**
              v.                              10-CV-550A

UNITED STATES OF AMERICA and
ERIC H. HOLDER, JR., in his Official
Capacity as Attorney General of the
United States, *et. al.*,

                         Defendants.

## INTRODUCTION

        Currently before the Court are motions for a preliminary injunction made by

plaintiffs, Native Americans who are in the business of selling cigarettes and

tobacco products via the Internet, mail and telephone. Plaintiffs seek to enjoin enforcement of the Prevent All Cigarette Trafficking Act of 2009 ("PACT Act" or "Act"), Pub. L. No. 111-154, 124 Stat. 1087 (2010), asserting that various provisions of the Act violate their due process and equal protection rights. They also assert that the Act violates the Commerce Clause, the Tenth Amendment and is void for vagueness.

Defendants, the United States of America and Attorney General Eric Holder, Jr., oppose the motion arguing that plaintiffs have failed to make the requisite showing necessary to enjoin enforcement of a federal statute.

Upon consideration of the parties' submissions and after hearing argument on July 7, 2010, the Court finds that plaintiffs have demonstrated: (1) a clear likelihood of success on the merits of their due process claim; (2) that they will suffer irreparable injury absent injunctive relief; and (3) that injunctive relief is in the public interest. Accordingly, the Court grants plaintiffs' motion for a preliminary injunction.

## **BACKGROUND**

Plaintiff Aaron J. Pierce is a member of the Seneca Nation of Indians ("Seneca Nation"), a federally recognized Indian tribe. Pierce owns and operates a tobacco retail business located on the Cattaraugus Indian Reservation, a Seneca Nation Territory, under the name Red Earth LLC d/b/a Seneca

Smokeshop.  Pierce has owned and operated that business since 2000, and employs 17 people, two of whom are members of the Seneca Nation.  Red Earth conducts business in 46 out of 50 states, and transacts all of its business via Internet, telephone, and mail orders.

Plaintiff Seneca Free Trade Association ("SFTA") is a not-for-profit organization chartered by the Seneca Nation.  SFTA is authorized to engage in advocacy efforts on behalf of its members.  Approximately 140 members of SFTA are in the tobacco retail business, including plaintiff Red Earth.  Those 140 members conduct their retail operations via Internet, telephone and mail orders and many rely exclusively on the United States Postal Service to deliver their tobacco products to their customers.  Customers of those 140 members are located throughout the United States.

Plaintiffs seek to enjoin enforcement of the PACT Act, which requires retailers of cigarettes and smokeless tobacco who perform "delivery sales"[1] to comply with all state and local laws in the jurisdiction where those products are being delivered (sometimes referred to herein as the "destination jurisdiction").  Specifically, the Act requires that delivery sellers[2] comply with:

> (3) all state, local, tribal, and other laws generally
> applicable to sales of cigarettes or smokeless tobacco

---

[1]  A "delivery sale" is a sale of cigarettes or smokeless tobacco that occurs when the buyer is not in the physical presence of the seller at the time of the sale.  *See* PACT Act, at § 1 (codified at 15 U.S.C. § 375(1)).

[2]  A delivery seller is one who performs a delivery sale.  *Id.*

as if the delivery sales occurred entirely within the specific state and place, including laws imposing--

> (A) excise taxes;
>
> (B) licensing and tax-stamping requirements;
>
> (C) restrictions on sales to minors; and
>
> (D) other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco; and

> (4) the tax collection requirements set forth in subsection (d).

*See* § 15 U.S.C. § 376a (a)(3)(2010). The tax collection requirements referred to in subsection (d) are codified at 15 U.S.C. § 376a(d) and require delivery sellers to pay any existing state or local excise taxes *in advance* of the sale or delivery. *See id.* at § 276a(d)(1). Furthermore, the Act provides that "a delivery sale shall be deemed to have occurred in the State and place where the buyer obtains personal possession of the cigarettes or smokeless tobacco, and a delivery pursuant to a delivery sale is deemed to have been initiated or ordered by the delivery seller." *Id.* at § 376a(f).

In addition to requiring that delivery sellers comply with all state and local requirements relating to the sale and distribution of cigarettes and smokeless tobacco in the destination jurisdiction, the Act declares cigarettes and smokeless tobacco to be "nonmailable matter." The Act provides:

All cigarettes and smokeless tobacco (as those terms are defined in section 1 of the Act of October 19, 1949, commonly referred to as the Jenkins Act) are nonmailable and shall not be deposited in or carried through the mails. The United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes or smokeless tobacco made nonmailable by this paragraph.

*See* § 4(3)(a)(1) of the PACT Act (codified at 18 U.S.C. § 1716E(a)). Exceptions to this general mailing prohibition are made for cigars and for "mailings [of cigarettes and smokeless tobacco products] within the State of Alaska or within the State of Hawaii." *Id.* at § 3(b). Any violation of the PACT Act is subject to civil penalties, as well as felony criminal prosecution punishable by imprisonment of up to three years. See PACT ACT, § 3(a)(1) (codified at 15 U.S.C. § 377(a)(1)).

Plaintiffs seek to enjoin enforcement of the PACT Act asserting that it violates their due process and equal protection rights, as well as the Commerce Clause and the Tenth Amendment. They argue that it is simply impossible to comply with the Act because its mandates are too vague and sweeping, and if the Act is permitted to take effect, they will be forced to close their businesses or face potential criminal prosecution.

The defendants assert that the PACT Act represents a valid act of Congress enacted pursuant to its Art. I, § 8 powers governing commerce.

# DISCUSSION

## I.    Standards for Injunctive Relief

In general, a district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010). However, where a party seeking a preliminary injunction attempts to enjoin application of a governmental statute or regulation, it cannot obtain injunctive relief by meeting the lesser "sufficiently serious questions" and "balance of the hardships" standard. Instead, it must demonstrate irreparable harm and a clear likelihood of success on the merits. *Id.; see also Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007); *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006). Additionally, the movant must show that granting a preliminary injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 129 S. Ct. 365 (2008). Injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks omitted).

## II.    Irreparable Harm

An irreparable harm is a harm for which "a monetary award cannot be adequate." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).  To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent injunctive relief they will suffer a harm that cannot be remedied by damages.  Plaintiffs must also show that the injury they will suffer is "actual and imminent" and not "remote or speculative."  *Grand River*, 481 F.3d at 66.

Plaintiffs assert that if the PACT Act is permitted to take effect, they will suffer deprivations of their due process and equal protection rights.  "When an alleged deprivation of a constitutional right is involved, . . . no further showing of irreparable injury is necessary."  *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948, at 440 (1973)).  Since plaintiffs allege deprivation of their constitutional rights, the Court is satisfied that the they have demonstrated a threat of irreparable injury absent injunctive relief.

Moreover, the allegations in the complaint indicate that plaintiffs will likely go out of business if the PACT Act is permitted to take effect.  Plaintiffs assert that the PACT Act's requirement that they collect and pay all state and local excise taxes to the destination jurisdiction before shipping any products is unduly burdensome because it requires them know of and comply with potentially

thousands of different state and local taxing schemes. They assert that the cost of compliance far outweighs the continued operation of their businesses. In fact, the record reflects that a number of cigarette retailers have begun closing down their businesses in anticipation of the Act taking effect. *See, e.g.*, Case No. 10-cv-550, Dkt. No. 7, at ¶ ¶ 41-42 (Decl. of Thomas Moll) ("[M]any of the 19 licensed Seneca tobacco wholesalers will be forced to close their doors in the immediate future and their employees will also lose their jobs . . . . I have personal knowledge that many SFTA members have already shut down, or are in the process of shutting down because of the PACT Act."). They also point to the Act's prohibition on use of the United States mails to ship cigarettes and smokeless tobacco and claim that if that provision takes effect, delivery sellers who rely exclusively on the United States mails to ship their products will be unable to deliver their products to their customers. The "loss of . . . an ongoing business representing many years of effort and the livelihood of its . . . owners, constitutes irreparable harm" that cannot be fully compensated by monetary damages. *See Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 125-26 (2d Cir. 1984). In light of those allegations, the Court finds that plaintiffs have easily satisfied their burden of showing a threat of irreparable injury if injunctive relief is not granted.

### III.   **Likelihood of Success**

To obtain injunctive relief, plaintiffs must also show a clear likelihood of success on the merits of their claim.  Plaintiffs assert that the Act violates the Commerce Clause, due process, equal protection and the Tenth Amendment. The Court will now consider the merits of those claims.

### A.   **Commerce Clause**

Pursuant to Article 1, § 8 of the Constitution, Congress has exclusive authority to "regulate Commerce with foreign Nations, and among the several States."  The Commerce Clause contains both an affirmative grant of authority and a negative sweep (referred to as the "dormant" commerce clause).   The negative or dormant implication of the Commerce Clause "prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce, [thereby impeding] the free private trade in the national marketplace."  *See General Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997).

All parties agree that the seminal case on the issue of the Commerce Clause, as it relates to the facts of this case, is *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992).  In *Quill*, the Supreme Court was asked to determine whether a mail-order catalog business that did not have any physical presence in the State of North Dakota could be required to collect and pay an excise tax on goods purchased by North Dakota residents for use in that State.  Adhering to the

"bright line" physical presence rule adopted in *National Bellas Hess, Inc. v. Dep't of Revenue of Ill.*, 386 U.S. 753 (1967) (overruled in part by *Quill*), the Supreme Court held that North Dakota's attempt to tax an out-of-state entity that lacked any physical presence in that State violated the dormant Commerce Clause. The Court explained that a "bright-line" rule requiring physical presence in a taxing jurisdiction before an out-of-state retailer can be subject to a tax was beneficial because it "firmly establishes the boundaries of legitimate state taxing authority to impose a duty to collect sales or use taxes and reduces litigation concerning those taxes." *Id.* at 315-16.

Citing *Quill,* plaintiffs assert that, because they lack any physical presence outside of New York State, the PACT Act's requirement that they pay state and local excise taxes in jurisdictions where they are not physically present violates the Commerce Clause. The key distinction between *Quill* and this case, however, is that the PACT Act is an act of Congress, not the act of an individual state. Although the Commerce Clause prohibits state and local jurisdictions from imposing taxes on entities located outside of their jurisdiction, that restriction does not apply to Congress. Congress has plenary authority to regulate the instrumentalities of commerce and along with this power, Congress can authorize a state or local tax that would otherwise run afoul of the Commerce Clause. *See New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982) ("Congress may use its powers under the Commerce Clause to '[confer] upon the

States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy . . . .'") (quoting *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44 (1980)).  The Supreme Court reiterated that very point in *Quill* when it noted that "Congress has plenary power to regulate commerce among the States and thus may authorize state actions that burden interstate commerce. . . ."  *Quill*, 504 U.S. at 305.  Indeed, the Court expressly noted in *Quill* that if Congress did not agree with the Court's conclusion in *Quill*, it possessed the "ultimate power" under the Commerce Clause to enact legislation to change that result.  *Id.* at 318.

However, as plaintiffs correctly note, if Congress intends to permit a state law that would otherwise burden commerce, it must evince a clear intent to provide such authorization.  *See Wyoming v. Oklahoma*, 502 U.S. 437, 457 (1992) ("Congress must manifest its unambiguous intent before a federal statute will be read to permit or to approve such a violation of the Commerce Clause . . . .").  The Court will look to the legislative history or language of the statute to ascertain whether Congress manifested an intent to alter the limits of state power imposed by the Commerce Clause.  *New England Power*, 455 U.S. at 341.  In order for a state regulation to be removed from the reach of the dormant Commerce Clause, "congressional intent must be unmistakably clear."  *See South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984).

In this Court's view, congressional intent to burden interstate commerce is "unmistakably clear."  The language of the PACT Act evinces clear congressional

intent to authorize the imposition of state and local cigarette taxes that would otherwise be inapplicable to out-of-state venders.  For example, as a basis for enacting the PACT Act, Congress found, *inter alia*, that "unfair competition from illegal sales of cigarettes and smokeless tobacco [over the Internet, through mail, fax and phone orders] is taking billions of dollars of sales away from law-abiding retailers throughout the United States," and "the intrastate sale of illegal cigarettes and smokeless tobacco over the Internet has a substantial effect on interstate commerce."  *See* PACT Act, at § 1(b)(6) and (10).  To deal with this issue, Congress enacted the PACT Act to "require Internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers" and to "increase collections of Federal, State and local excise taxes on cigarettes and smokeless tobacco."  *Id.* at §1(c)(1) and (5).  The PACT Act requires that remote sellers of cigarettes and smokeless tobacco pay all state and local excise taxes imposed by a given jurisdiction *before* shipping those tobacco products into that jurisdiction.  *Id.* at §2A(d) (codified at 15 U.S.C. § 376a(d)) (requiring the payment of all state and local excise taxes in the destination jurisdiction to be paid "in advance" of delivery).  Congress intended to assist state and local governments in the collection of cigarette and smokeless tobacco excise taxes and to require remote sellers to be subject to the same taxes that apply to non-remote sellers.  Since a

primary goal of the legislation is to make otherwise invalid state and local taxes[3] apply to remote sellers, Congressional intent to alter the limits of state power otherwise restricted by the Commerce Clause is "unmistakably clear." And because Congress has the power to authorize state and local laws that burden commerce, the Court finds that plaintiffs have failed to show a likelihood of success on the merits of their Commerce Clause claim.

Plaintiffs also assert that the PACT Act violates the non-delegation doctrine. The non-delegation doctrine prevents Congress from abdicating, or transferring to others, the essential legislative functions with which it is vested. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1934). Plaintiffs assert that if Congress desires to impose taxes on the sale of cigarettes or smokeless tobacco, it has the power to do that. What it cannot do, plaintiffs assert, is delegate its taxing authority to a state.

The Court does not agree that the PACT Act runs afoul of the non-delegation doctrine. In the Act, Congress is not delegating its own authority to tax. Instead, Congress is merely eliminating any dormant Commerce Clause restriction, leaving states free to tax out-of-state retailers pursuant to their own taxing authority–not Congress's. Accordingly, the Court finds that plaintiffs are unlikely to succeed on the merits of their non-delegation doctrine claim.

---

[3] For the reasons discussed above, pre-PACT Act, any state or local tax by jurisdictions located outside New York State would have been invalid as to plaintiffs under *Quill* because plaintiffs are not physically present outside of New York State.

**B.**   **Due Process Clause**

1.   Failure to Account for Minimum Contacts

In addition to the Commerce Clause, state taxing schemes must also satisfy the requirements of the Due Process Clause.  As one commentator stated: "[I]n order for [a state tax] to reach the harbor of constitutionality, it must sail safely past the Scylla of the Commerce Clause and the Charybdis of due process."  Charles Trost and Paul Hartman, *Federal Limitations on State and Local Taxation*, § 2:3 (2d ed.).  "The Commerce Clause and the Due Process Clause impose distinct but parallel limitations on a State's power to tax out-of-state activities.  *Meadwestvaco Corp. V. Ill. Dep't of Revenue*, 553 U.S. 16, 24 (2008)(citing *Quill*, 504 U.S. at 305-06). The Commerce Clause forbids states to levy taxes that discriminate against or burden interstate commerce, whereas the Due Process Clause "demands that there exist some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax."  *Id.* (internal quotations omitted.).  Due process also requires that "income attributed to the State for tax purposes must be rationally related to the values connected with the taxing State."  *Quill*, 504 U.S. at 306 (internal quotation omitted).  "The restraining power of the [D]ue [P]rocess [C]lause on the taxing power of the States . . . keeps the taxing power of the States at home."  Trost and Hartman*, Federal Limitations on State and Local Taxation, § 2:3 (2d ed.).*  A state

tax that fails to satisfy due process considerations will not survive constitutional scrutiny.

Plaintiffs argue that the PACT Act violates the Due Process Clause because it subjects them to the taxing jurisdiction of state and local governments without regard to whether they have sufficient minimum contacts with those taxing jurisdictions. Before *Quill*, the test for a state or local tax imposed on an out-of-state vendor under the Due Process Clause was the same as the test under the Commerce Clause–physical presence within the taxing jurisdiction was required. Absent physical presence in the taxing jurisdiction, a state tax was deemed to violate due process. Hence, in *Bellas Hess*, the Supreme Court struck down an Illinois state tax that required an out-of-state retailer to collect excise taxes on purchases made by Illinois residents. The Supreme Court opined that due process considerations prohibited a state from imposing a duty to collect a use tax upon an out-of-state retailer with no physical presence in that state. *Bellas Hess*, 386 U.S. 758-59. In contrast, in *Nat'l Geographic Society v. California Board of Equalization*, 430 U.S. 551 (1977), the Supreme Court upheld the constitutionality of a California State tax that required an out-of-state seller to collect use taxes on mail-order purchases made by California residents where the out-of-state seller maintained offices in California. Thus, pre-*Quill*, the touchstone for imposing a duty to collect use taxes under the Due Process Clause was–like the Commerce Clause–physical presence.

As commerce became increasingly interstate, the Court's jurisprudence under the Due Process Clause evolved, eventually leading the Court to abandon its "bright line" rule requiring physical presence as the touchstone for jurisdiction to tax. In *Quill*, the Court overruled *Bellas Hess*'s mandate that an out-of-state seller must have a physical presence in the state before the state tax will pass muster under the Due Process Clause. Instead, the Court explained that the state tax will satisfy due process as long as the out-of-state seller has "minimum contacts with the jurisdiction 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Quill*, 504 U.S. at 307 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1045)). That is, the Court "abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of Government, to require it to defend the suit in that State" *id.*, or collect an excise tax. The Court held that the North Dakota tax at issue in *Quill* did not violate due process, even though the plaintiff had no physical presence in North Dakota, because plaintiff was "engaged in continuous and widespread solicitation of business within [that state]" such that it had "fair warning that [its] activities may subject [it] to jurisdiction of the foreign sovereign." *Id.* at 308 (quotation omitted). Based upon that "continuous and widespread solicitation of business" in North Dakota, the Court found:

> [T]here is no question that Quill has purposefully directed its activities at North Dakota residents, that the magnitude of those contacts is more than sufficient for due process purposes, and that the use tax is related to the benefits Quill receives from access to the State. We therefore agree with the North Dakota Supreme Court's conclusion that the Due Process Clause does not bar enforcement of that State's use tax against Quill.

*Id*. In light of *Quill*, it is clear that a state tax imposing a duty to collect excise taxes upon an out-of-state seller will survive due process scrutiny when out-of-state seller engages in "regular or systematic solicitation" of business within that taxing jurisdiction.

The unique problem presented in this case is that the PACT Act requires remote sellers who are not physically present in a taxing jurisdiction to collect state and local excise taxes on cigarettes and smokeless tobacco *regardless of whether their existing contacts with that taxing jurisdiction rise to the level of minimum contacts necessary to satisfy due process considerations*. Perhaps even more troublesome is the fact that the Act makes the failure to collect and remit such taxes a federal felony punishable by up to three years of imprisonment. If the statute is permitted to take effect, remote sellers will be required to pay taxes anywhere they ship their products even if they otherwise lack minimum contacts with that taxing jurisdiction. And their failure to do so will subject them to criminal prosecution.[4]

---

[4] It is not clear *where* jurisdiction for such a criminal action would lie. The Jenkins Act provides that "district courts shall have jurisdiction to prevent and restrain violations" of that statute, but does not say where those criminal actions can be brought. It is conceivable that a

In *Quill*, the Supreme Court made clear that Congress does not have the power to authorize violations of the Due Process Clause. *See Quill*, 504 U.S. at 305 ("[W]hile Congress has plenary power to regulate commerce among the States and thus may authorize state actions that burden interstate commerce, *it does not similarly have the power to authorize violations of the Due Process Clause*.") (citing *Int'l Shoe*, 326 U.S. at 315) (emphasis added). Defendants concede that a state cannot seize property from a person, even in the form of taxation, without "some definite link, some minimum connection between the state and the person, property or transaction it seeks to tax." *See* Def. Memo. of Law in Opp. to Mtn. for Preliminary Injunction, Case No. 10-CV-530, Dkt. 25, at 24 (citing *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-45 (1954)). Defendants also acknowledge that "[w]ithout minimum contacts, a state cannot require an out of state corporation to collect taxes on shipments made from another state." *Id.* (citing *Quill*, 504 U.S. at 306); *see also Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 182 (1980) (Rehnquist, *J.*, concurring in part and dissenting in part) ("Of course in order to collect the tax from the merchant located beyond the territorial jurisdiction of the taxing State, there must also be a relationship between the State and the burdened merchant sufficient to

---

criminal prosecution could be brought in the destination jurisdiction, even though plaintiffs are not physically present in that jurisdiction and may never have stepped foot in that state. *See, e.g., Washington Dep't of Revenue v. www.dirtcheapcig.com, Inc.*, 260 F. Supp. 2d 1048 (W.D. Wash. 2003)(holding that State of Washington could bring civil action against out-of-state retailer for violation of the Jenkins Act based upon internet sales made through website to Washington residents).

satisfy principles of due process."). Nevertheless, defendants assert that there is no due process problem inherent in the PACT Act because "minimum contacts" with the taxing jurisdiction are satisfied by: (1) the fact that plaintiffs maintain a commercial website advertising the products for sale; and (2) the fact that plaintiffs ship their goods into the specific taxing jurisdiction.

Reliance upon the existence of Internet websites to establish minimum contacts is problematic for two reasons. First, and most importantly, not all plaintiffs in this case have websites. The allegations in this case are that some plaintiffs have websites and others do not. The ones that don't simply accept telephone or mail orders for cigarettes and smokeless tobacco and then ship those products to their customers via United States mail.[5] Defendants' argument makes no accommodation for those remote sellers that lack any Internet presence. Second, even as to those sellers that do have an Internet presence, those websites are arguably classified as "passive." The website is akin to a virtual mail order catalog of cigarettes and smokeless tobacco, available for interested customers to view from their home computer (if they specifically seek out that website by doing an Internet search), but with no ability to consummate the purchase over the Internet. Instead, the customer may place an online order

---

[5]  At this juncture, it is undisputed that none of the plaintiffs advertise outside New York state, send catalogs to other states, or send mailings to other states. However, plaintiff Red Earth admits to sending unsolicited emails to its existing and former customers.

that will be filled only after that customer then mails a money order to the retailer.[6]

During oral argument, defendants urged this Court to find that merely having an

Internet website establishes minimum contacts with any jurisdiction in which that

website can be viewed.  The Court declines to adopt such a sweeping

prescription which appears to lack support under existing caselaw.  In any event,

the existence of a website for some plaintiffs does not overcome the due process

problem because the statute applies even as to those plaintiffs who don't have

any Internet presence.[7]  Therefore, the constitutionality of the Act cannot be

satisfied by showing that a particular plaintiff does business over the Internet.

That leaves only the second ground cited by the defendants to satisfy due

process–*i.e.* that the transaction itself creates sufficient minimum contacts with a

forum for due process purposes.  Since plaintiffs will be required to pay the tax in

each jurisdiction where they ship their products, regardless of how isolated or

sporadic those shipments may be, it would appear that the defendants are urging

---

[6]  The government mistakenly asserts in its brief that the plaintiffs accept credit card payments over the Internet via their website. Based upon representations made by plaintiffs during oral argument, that is incorrect.  No credit card or paypal payments are accepted and the sale is not consummated until a money order is received via mail.

[7]  Numerous courts have struggled to define when Internet contacts are sufficient to create personal jurisdiction.  In doing so, many district and circuit courts have turned to the standards set out in *Zippo Manufacturing Co.  v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa 1997).  In that case, the court described a "spectrum" of Internet contacts that might suffice for due process, with a "passive Web site that does little more than make information available to those who are interested in it" at one end of the spectrum, and an "interactive" website through which the defendant does business over the Internet at the other.  *Id.* at 1124.  It is not clear where on that spectrum plaintiff Red Earth's website would fall.  However, the Court finds it unnecessary to reach that issue at this juncture because the PACT Act applies to all venders, even those lacking *any* Internet presence.

this Court to conclude that each sale itself creates the minimum contacts necessary to impose a duty to collect taxes on an out-of-state seller.

A "bright-line" rule holding that each sale automatically satisfies minimum contacts with a taxing jurisdiction is appealing, and would undoubtedly inject certainty into the area of whether minimum contacts exist.[8]  As far as this Court is aware, however, such a rule has not yet been endorsed by the Supreme Court or by any circuit courts.  In fact, existing cases suggest the opposite–that a single, isolated sale may not be enough to subject a seller to a foreign jurisdiction.  In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), the Supreme Court explained that "a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents," *id*. at 473, so as to "ensure[] that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 475.  In *Burger King*, the Court found that sufficient contacts were established where the defendant had deliberately engaged in "significant activities" within the forum state and created "continuing obligations" between himself and residents of the forum such that it was not unreasonable to require him to submit to the burdens of litigation there.  Likewise, parties who "reach out beyond one state and create

---

[8]  As one district court rhetorically asked: "Wouldn't a simpler rule–*e.g.*, one holding that an internet seller is subject to jurisdiction anywhere he delivers a product–be preferable, if only to avoid the social cost of repeated litigation over whether the quality and nature of the defendant's activity support jurisdiction?"  *Chloe v. Queen Bee of Beverly Hills, LLC,* 630 F.Supp. 2d 350, 355-56 (S.D.N.Y. 2009).

continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950). However, as far as this Court is aware, it has never been held that a single sale, without more, will automatically satisfy due process requirements. In fact, several cases have held to the contrary. *See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC*, 630 F.Supp. 2d 350 (S.D.N.Y. 2009) (holding that a single Internet-based sale of a counterfeit retail product in New York by a California defendant constituted insufficient contacts to require a California defendant to be subject to suit in New York based upon that purchase); *Shamsuddin v. Vitamin Research Products*, 346 F.Supp. 2d 804, 813 (D. Md. 2004) (holding that two sales to forum residents from commercial website were insufficient for the exercise of personal jurisdiction over the defendant, and stating that "[a] corporation's sales to forum residents must be more than 'isolated' occurrences for the assertion of jurisdiction to satisfy the requirements of due process."); *iAccess Inc. v. WEBcard Tech. Inc.*, 182 F.Supp. 2d 1183, 1189 (D. Utah 2002) (finding that one purchase by a forum resident was not sufficient for personal jurisdiction); *Butler v. Beer Across America*, 83 F.Supp. 2d 1261 (N.D. Ala. 2000) (holding that single purchase of beer over internet to Alabama minor by Illinois corporation was insufficient to support jurisdiction over Illinois defendant in Alabama).

Defendants cite *Allstate Ins. Co. v. Hague*, 949 U.S. 302 (1981), as having provided a "concise test" for determining whether legislative jurisdiction may be exercised over an out-of-state entity:

> [F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a *significant contact or significant aggregation of contacts*, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

*See* Def. Memo. of Law in Opp. to Mtn for a Preliminary Injunction, Case No. 10-cv-530A, Dkt. No. 25, at 25 (citing *Hague*, 449 U.S. at 312-13) (emphasis added). If defendants are correct and *Hague* is the test to be applied, it is doubtful that single, isolated sales would rise to the level of "significant contact" or a "significant aggregation of contacts" necessary to satisfy due process. Indeed, if a single sale into a foreign jurisdiction were sufficient to automatically impose a duty-to-collect taxes, the Supreme Court in *Quill* likely would have rested its due process discussion on that ground. But the Supreme Court did not. Instead, the Supreme Court opined that minimum contacts existed because the mail-order house at issue had "engaged in continuous and widespread solicitation of business" within that state, which included sending a "deluge of catalogues" into that forum. *Quill*, 504 U.S. at 308. According to the Court, due process was not offended based upon the "magnitude" of Quill's contacts with the forum state.

In contrast to the "magnitude" of contacts that existed in *Quill*, the PACT Act automatically subjects a remote seller to "all state, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco" of the forum

where those products are delivered, notwithstanding the presence or absence of any other contacts with that forum. This means that plaintiffs will now be subject to the taxing jurisdiction of every state, municipality, village, town and school district that imposes taxes on sales of cigarettes and smokeless tobacco.[9] By failing to require any minimum contacts before subjecting the out-of-state retailer to "all state, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco," Congress is broadening the jurisdictional reach of each state and locality without regard to the constraints imposed by the Due Process Clause. That it cannot do. It would appear that the PACT Act seeks to legislate the due process requirement out of the equation. To the extent that it does and that doing so is beyond Congressional authority, plaintiffs have established a clear likelihood of success on the merits of their due process claim.

## 2. Vagueness of PACT Act Prohibitions

The absence of any threshold requirement for minimum contacts dovetails into the plaintiffs' second due process argument–that the statute is void for vagueness. Plaintiffs argue that the PACT Act is unconstitutionally vague because the statute is inconsistent with the sovereign rights of Native-Americans, and because it is impermissibly vague in defining the laws with which plaintiffs must comply in order to avoid criminal prosecution.

---

[9] The PACT Act also grants every state and local taxing jurisdiction access to plaintiffs' records for sales made to residents of those jurisdictions. *See* 15 U.S.C. § 376a(c).

With regard to the first argument, the PACT Act certainly raises unresolved issues relating to conflicts between the Act's enforcement and sovereign rights of Native Americans. Prior to the PACT Act, the law was clear that a state has authority to tax non-Indian residents who purchase goods at Indian-owned smoke shops located on an Indian reservation, and that the state could also impose the "minimal burden" of collecting that tax upon the Indian-owned retailer.[10]  *See Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134 (1980)*; Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463 (1976).  Indeed, plaintiffs acknowledged at oral argument that, *provided sufficient minimum contacts with a forum exist*, a state may impose the duty to collect excise taxes upon Indian-owned retailers for sales made to non-Indians.  However, in contrast to the "minimal burden" approved of by the Supreme Court in *Moe* and *Colville*, the PACT Act requires Native American retailers to collect taxes on behalf of a host of different state and local

---

[10]  Of course, a tax imposed directly upon the Indian smoke shop itself would be problematic because a "[s]tate is without power to tax reservation lands and reservation Indians."  *See Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458 (1995).  The key issue is:

> who bears the legal incidence of a tax.  If the legal incidence of an excise tax rests on a tribe or on tribal members for sales made inside Indian country, the tax cannot be enforced. . . . But if the legal incidence of the tax rests on non-Indians [as it clearly does in this case], no categorical bar prevents enforcement of the tax . . . [and] the State may impose its levy . . . and may place on a tribe or tribal members 'minimal burdens' in collecting the toll. . . . .

*Id.* at 459.

taxing jurisdictions.  Compliance with the plethora of state and local laws now made applicable under the PACT Act far exceeds the "minimal burden" approved of by the Supreme Court.  Whether the Supreme Court would likewise approve of the requirement that Native American retailers be subject to the jurisdiction of *every* state and *every* locality into which their goods are shipped is unclear and certainly merits further inquiry.  At this juncture, however, it cannot be said that plaintiffs have shown a clear likelihood of success on the merits of that claim.

Alternatively, plaintiffs argue that the statue is impermissibly vague as to the conduct that is prohibited because it incorporates generally the laws relating to the sale of cigarettes and smokeless tobacco of the destination jurisdiction. They note that there are at least 6,000 different taxing jurisdictions (possibly as many as 8,000) and that requiring a remote seller to know what conduct is proscribed by each one of those taxing jurisdictions is impossible to ascertain.

Defendants cavalierly dismiss plaintiffs' concerns as to the burdens imposed by the PACT Act as "the cost of doing business."  They also claim that only 550 of those 6,000 plus taxing jurisdictions currently have laws relating to the sale of cigarettes.  The Court finds the number of current taxing statutes to be irrelevant because, even if there are only 550 today, there are thousands of taxing jurisdictions and any one of them can enact new legislation relating to the sale of cigarettes and smokeless tobacco tomorrow.  Indeed, plaintiffs proffered at oral argument that the City of Buffalo is currently considering imposing its own

tax levy on the sale of cigarettes.  And as the Supreme Court noted in *Bellas Hess*,

> [I]f the power of Illinois to impose use tax burdens upon National were upheld, the resulting impediments upon the free conduct of its interstate business would be neither imaginary nor remote. For if Illinois can impose such burdens, so can every other State, and so, indeed, can every municipality, every school district, and every other political subdivision throughout the Nation with power to impose sales and use taxes. The many variations in rates of tax, in allowable exemptions, and in administrative and record-keeping requirements could entangle National's interstate business in a virtual welter of complicated obligations to local jurisdictions with no legitimate claim to impose 'a fair share of the cost of the local government.'

*Bellas Hess*, 386 U.S. 759-60 (footnotes omitted).

Although the Court agrees that the PACT Act makes compliance with the various state and local cigarette laws truly burdensome, the Court finds that plaintiffs are unlikely to succeed on their void-for-vagueness claim.  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Thus, a law or regulation whose violation could lead to such a deprivation must be crafted with sufficient clarity to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and to "provide explicit standards for those who apply them." *Id.*

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to

be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications."

*See Grayned*, 408 U.S. at 108-109.  The Supreme Court recently reiterated the void-for-vagueness doctrine in *Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010).  "To satisfy due process, 'a penal statute [must] define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

In *Interactive Media Entertainment and Gaming Ass'n, Inc. v. United States*, 580 F.3d 113 (3d Cir. 2009), the Third Circuit addressed an argument similar to that made by the plaintiffs here.  Plaintiff in that case challenged the Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5361, as void for vagueness.  That statute incorporated federal, state and tribal laws relating to the legality of gambling, and made it a crime for any person to engage in the business of gambling with another person via the Internet where "such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received or otherwise made." *Id.* at 114 (quoting 31 U.S.C. § 5362).  Like the PACT Act, a violation of that statute was punishable as a felony crime.  Plaintiff argued that compliance with the

statute was impossible because the statute lacked an "ascertainable and workable definition" of illegal gambling by failing to define illegal gambling and instead incorporating other federal and state laws relating to gambling. The Third Circuit rejected that argument stating: "'[A] statute is not unconstitutionally vague merely because it incorporates other provisions by reference; a reasonable person of ordinary intelligence would consult the incorporated provisions.'" *Id.* at 116 (quoting *United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir. 1998)). Indeed, as the defendants note, there are a plethora of federal statutes that incorporate state and local laws by reference. *See* Def. Memo. of Law in Opp. Mtn. for Preliminary Injunction, Case No. 10-cv-530, Dkt. 25, at 16 n.2.

Compliance with the plethora of federal and local laws relating to cigarette sales no doubt will be burdensome. Before shipping an order, a remote seller will need to consult the existing laws to ensure that they have paid the requisite taxes and are in full compliance with the applicable laws of the destination jurisdiction. And a violation of any of those state or local laws could subject plaintiffs to civil and criminal penalties. However, the fact that compliance will be burdensome does not make it vague. As the *Interactive Media* court noted: "[w]hat renders a statue vague is not the possibility that it will sometime be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Interactive Media*, 580 F.3d at 117 (quotation omitted). Because a reasonable person could determine what is

prohibited and what is permissible by consulting state and local laws governing cigarette sales in the governing jurisdictions, the PACT Act's incorporation of state and local laws does not make it unconstitutionally vague and therefore plaintiffs are unlikely succeed on that claim.

## C.    Equal Protection Claims

Plaintiffs assert that the PACT Act violates the equal protection component of the Fifth Amendment's Due Process Clause[11] because: (1) it is motivated by an intent to discriminate against Native American retailers; and (2) the use-of-the-mails prohibition discriminates against citizens of different states without any rational basis.

### 1.    Intentional Discrimination against Native American Retailers

As to their first contention, plaintiffs claim that Congress intentionally discriminated against them based upon their status as Native Americans in violation of equal protection guarantees.  Intentional discrimination can be demonstrated in several ways.  First, a law or policy is discriminatory on its face if it expressly classifies persons on the basis of race or gender. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213 (1995).  Second, a law which is

---

[11]  Equal protection analysis under the Fifth Amendment is the same as that under the Fourteenth Amendment.  *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).

facially neutral violates equal protection if it is applied in a discriminatory fashion. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Lastly, a facially neutral statute violates equal protection if it was motivated by discriminatory animus and its application results in a discriminatory effect. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977).

It is clear that plaintiffs are alleging the third scenario–that the PACT Act, a facially neutral statute, violates equal protection because it was motivated by discriminatory animus and its application results in a discriminatory effect.

That the PACT Act will have a disproportionate effect on Native Americans is undisputed. Defendants admitted during oral argument that the vast majority of retailers selling cigarettes and smokeless tobacco remotely are Native Americans. In fact, the government estimated that at least 80 percent or more of cigarette and smokeless tobacco delivery sellers are Native American. Legislative history of the Act indicates that Congress was keenly aware of that fact. *See, e.g.*, Dkt. No. 30-2, at 50 (testimony of Government Accounting Office that the majority of Internet cigarette retailers are Native Americans); Dkt. No. 33 at 51 (letter to Congress from National Association of Convenience Stores stating that the majority of Internet cigarette retailers are operated by Native Americans).

However, an equal protection violation cannot be established simply by showing an adverse impact upon a particular group. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious discrimination."

*Washington v. Davis*, 426 U.S. 229, 242 (1976).  Instead, plaintiffs must establish that Congress enacted the PACT Act with the intent to discriminate against Native Americans.

Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part '*because of*,' not merely '*in spite of*,' its adverse effects upon an identifiable group." *Personnel Administrator v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis added).  Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences."  *Id.* Discriminatory intent or purpose typically refers to those instances when a government actor seeks to disadvantage or negatively impact a group of persons. *See, e.g., Washington,* 426 U.S. at 245-46 (1976) (concluding that purposeful discrimination was not present in a police officers' examination designed simply to test the level of an applicant's verbal skills even though black candidates suffered disproportionate adverse effects); *Arlington Heights*, 429 U.S. at 268-71 (finding that, although the ultimate effect of a policy was discriminatory, there was no intent to discriminate when the record aptly demonstrated the decision was motivated by zoning, not racial, concerns).

Plaintiffs assert that Congress acted with a discriminatory purpose in enacting the statute.  In particular, they point to numerous instances in the record where members of Congress stated that the PACT Act was necessary to deal with the problem of remote cigarette sales by Native Americans who claim

sovereignty from state and local taxes.[12]  They also point to legislative history that they perceive evinces animus toward Native Americans.  Specifically, they note that when a letter from the Seneca Nation of Indians was being introduced into the Congressional record, there was laughter by some of these present.  Plaintiffs perceive the laughter as indicating ridicule of the Seneca Nation's position.

In enacting the PACT Act, Congress was clearly concerned with the loss of state and local tax dollars each year. Congress attributed some of those losses to the fact that state and local governments were unable to collect taxes from Native American retailers who, in Congress's view, had improperly asserted sovereignty as a basis for avoiding taxes.  Sovereignty is a characteristic unique to Native Americans as only Native Americans can plausibly make an assertion of sovereignty–whether properly or improperly.  That the PACT Act was intended to curtail what Congress believed to be improper assertions of sovereignty by Native American retailers is not the same thing as saying that Congress purposefully discriminated against Native Americans as a group.  Rather than purposeful discrimination against Native Americans because they are Native Americans, the Act is directed at leveling the playing field for all individuals engaged in retail

---

[12]. *See, e.g.*, Dkt. No. 30-2 at 54 (inquiry by Rep. Keller to GAO official Paul Jones as to whether Native American status provides an exemption from the Jenkins Act); Dkt. No. 31 at 2-5 (letter exchange between Rep. Smith and GAO official Paul Jones regarding GAO's position on the applicability of the Jenkins Act to Native American tribes); Dkt. No. 32-2 at 38 (report by Rep. King) ("However, in the 14 years since the U.S. Supreme Court ruled that it was within the constitutional authority for the State of New York to tax cigarette sales by Native Americans to non-Native Americans, New York State has not collected these taxes.  Instead, the State maintains its policy of forbearance.  While no clear reason has been given, it is likely that Albany simply fears upsetting the State's Native American population.").

sales of cigarettes and smokeless tobacco. Congress recognized that leveling the playing field would have an adverse impact upon Native American retailers, but took that action *in spite of* that fact, and *not because of* it. Accordingly, plaintiffs have failed to establish a clear likelihood of success on the merits of their invidious discrimination claim.

2. <u>Classification based upon Geographical Location</u>

Plaintiffs next challenge the use-of-the-mails prohibition on the ground that it discriminates in favor of residents of Alaska and Hawaii in violation of equal protection guarantees. The proper method of analysis of this challenge is rational-basis review because fundamental rights are not implicated. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-40 (1985); *Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007).

When legislation is reviewed for a rational basis, "courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws." *Gregory v. Ashcroft*, 501 U.S. 452, 470-71 (1991) (internal quotation marks omitted). The Supreme Court has stated that courts should "not overturn such a [law] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97 (1979). Furthermore, the Supreme Court has emphasized that

34

under rational basis review, legislatures are allowed to act incrementally: the Equal Protection Clause "does not compel . . . [l]egislatures to prohibit all like evils, or none. A legislature may hit at an abuse which it has found, even though it has failed to strike at another." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 151 (1938). Rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam). For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded "a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). "A classification must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 320.

Essentially, plaintiffs argue that the classification established under the statute is overinclusive because it includes many people in Alaska and Hawaii that do not rely exclusively upon the mail to obtain their consumables, such as individuals living in large cities like Honolulu and Anchorage. Plaintiffs argue that the classification is also underinclusive because it leaves out individuals in other

remote regions of the 48 contiguous states who also rely exclusively upon the mails to obtain their groceries. For example, plaintiffs note that there are rural residents located outside of Alaska and Hawaii who also depend exclusively on the United States mails to receive their groceries and other consumables,[13] yet the PACT Act does not exempt those similarly-situated residents. Unfortunately for plaintiffs, "rational basis review allows legislatures to act incrementally and to pass laws that are over (and under) inclusive without violating [equal protection requirements]." *See Hayden v. Paterson*, 594 F.3d 150, 171 (2d Cir. 2010). "Even if the classification . . . is to some extent both underinclusive and overinclusive, and hence the line drawn . . . imperfect, it is nevertheless the rule that . . . perfection is by no means required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979) (affirming statutory provision requiring forced retirement from foreign service at age 60). "The provision does not offend the Constitution simply because the classification is not made with mathematical nicety . . . ." *Id.* (internal quotation omitted). Legislatures are permitted to use generalizations so long as "the question is at least debatable." *Heller*, 509 U.S. at 326.

---

[13] *See, e.g.,* Dkt. No. 26-2 at 17 ("The Point Roberts, WA, Post Office cannot be reached by vehicle unless you drive through British Columbia, Canada. Only a boat or float plane will get you there directly."); *id.* at 18 ("Most Unusual Delivery Method—mule trains in Arizona. Each mule carries about 130 pounds of mail, food, supplies and furniture down the 8-mile trail to the Havasupai Indians, averaging 41,000 pounds per week."); Dkt. No. 26-4 (discussing mail service to the Frank Church Wilderness area of Idaho).

Here, the statute seeks to prohibit use of the mails because it was Congress's judgment that use of the mails to deliver cigarettes and smokeless tobacco facilitates illegal cigarette trafficking and enhances the accessability of cigarettes for minors. Accordingly, Congress enacted the PACT Act to preclude using the mails as a means to ship cigarettes and smokeless tobacco products. It is beyond dispute that Congress has the authority to completely ban those products from the mails.

However, Congress made an exception for mailings within the States of Alaska and Hawaii because it was Congress's judgment that, without such an exception, some citizens in Alaska and Hawaii would not be able to obtain those products at all. The legislative history reveals that Congress was concerned that certain areas of those states are so remote that its citizens rely exclusively upon the use of the mails to obtain their groceries and other consumables. *See* Dkt. No. 34-2 at 16 (copy of S. Rep. 110-153 (2007)) ("This exception was included to allow mailings of cigarettes and smokeless tobacco to persons located in remote areas of Hawaii or Alaska, where individuals are forced to rely exclusively on the mails to obtain groceries and other consumables."). Without an exception, the PACT Act would essentially operate as a complete ban of those products in certain remote communities in Hawaii and Alaska because there would be no way for residents of those states to obtain them. Nothing about the PACT Act indicates that Congress intended to completely ban the sale of cigarettes and

smokeless tobacco. Instead, the statute is intended curb the proliferation of sales of those products over the Internet and Congress believed that one way to do so would be to restrict how those products can be delivered. Congress determined that by permitting cigarettes and smokeless tobacco to be mailed *within* the States of Alaska and Hawaii, while maintaining the prohibition of *interstate* mailings of those products, Congress could achieve the PACT Act's purposes of preventing illicit trafficking and evading state taxes while at the same time making those products available to citizens located in remote areas of those states who rely exclusively on the mails to obtain their consumables. When there are "plausible reasons" for governmental action, this Court's inquiry must cease. *United States RR Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980). "The task of classifying persons for . . . benefits . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* (internal citation and quotation omitted).

Accordingly, the Court finds that plaintiffs have failed to show that they are likely to succeed on the merits of their equal protection claims.

**4.    Tenth Amendment**

Finally, plaintiffs assert a claim under the Tenth Amendment of the Constitution, which provides "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  This Court need not address the merits of their Tenth Amendment claim because under binding Second Circuit authority, plaintiffs, as private parties, lack standing to bring it.  *See Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 234 (2d Cir. 2006) (holding that private parties lack standing to bring Tenth Amendment claim); *accord United States v. Bond*, 581 F.3d 128 (3d Cir. 2009) (joining the majority of circuit courts in concluding that a private party lacks standing to bring a Tenth Amendment claim but observing a slit of circuit authority on that question).

**IV.    Injunctive Relief is in the Public Interest**

Before granting injunctive relief staying the enforcement of an act of Congress, the Court must find that the public interest favors such an extraordinary remedy.  The Court is mindful that an act of Congress represents the collective will of a majority of our nation's democratically-elected representatives and that plaintiffs who seek to enjoin a federal statute face a heavy burden.  That said, the Court finds that they have met their burden by

demonstrating a threat of irreparable injury absent injunctive relief and a clear likelihood of success on the merits of their due process claim.

If this Act is permitted to take effect, remote cigarette retailers will be put out of business because they lack the financial resources needed to ensure compliance with the myriad of state and local ordinances to which they are now subject under the Act. Hence, they will face the Hobson's choice of ceasing what they believe to be lawful business activities, or continuing to engage in those activities while facing the threat of criminal prosecution if they are wrong. Because it is likely that most will chose the former, safer course of ceasing activities to avoid criminal prosecution, most retailers will be forced to shut down operations if injunctive relief is denied. Undoubtedly, this will have a significant adverse economic impact upon plaintiffs and their employees, all of whom presumably reside in the Western New York area and many of whom likely reside on the Seneca Nation reservation itself. According to an *amicus curie* brief submitted on behalf of the Seneca Nation, enforcement of the PACT Act would "devastate the livelihoods of scores of Seneca retailers and thousands of employees in Western New York." *See* Seneca Nation of Indians' Brief *Amicus Curiae* in Support of Plaintiffs' Motion for a Preliminary Injunction, Dkt. 42-3, at 2. In light of the severe economic consequence likely to befall those members of the Western New York community, public interest favors staying enforcement pending further litigation of plaintiffs' claims.

Public interest also favors staying enforcement of the PACT Act for another reason. Plaintiffs assert (and defendants do not appear to dispute) that the Congressional expansion of state and local taxing schemes–as mandated under the PACT Act–is unprecedented. The Court is aware of no other federal statute requiring out-of-state retailers to be subject to taxing schemes for state and local governments into which they ship their goods, without regard to whether those retailers have minimum contacts required under the Due Process Clause. While legal commentators have pondered the scope of Congressional authority to enact such legislation,[14] the Court believes that this is the first time it has actually been done. And if Congress possesses the authority to subject out-of-state retailers to *every* state and local taxing jurisdiction into which their products are delivered, then it has the authority to do so for *all commercial products*, not just cigarettes.

---

[14] See e.g., H. Beau Baez III, *The Rush to the Goblin Market: The Blurring of Quill's Two Nexus Tests*, 29 Seattle U. L. Rev 581, 600, 608, at n. 167 (2006) (suggesting that, for example, "Congress could pass legislation allowing states to require every seller of tangible personal property in interstate commerce to collect the destination state's sales tax, and that the collected tax must be remitted, in-person by the owner of the company, on an hourly basis. While this legislation would be valid under the Commerce Clause, it would certainly run afoul of the Due Process Clause."); Walter Hellerstein, *State and Local Taxation of Electronic Commerce: Reflection on the Emerging Issues*, 52 U. Miami L. Rev. 691, 722 (1998) (stating that it is "difficult" to answer the question of "whether congressional consent to (or enactment of) legislation [authorizing the imposition of state and local use taxes] would eliminate any due process objections"); Note, Emily Sneddon, *Constitutional Law–State Taxation of Interstate Commerce–Use Taxes on Mail-Order Business with No Physical Presence in the Taxing State*, 15 U. Ark. Little Rock L.J., 299, 318 (1993)("The courts will have to determine the point at which the magnitude of activity directed at the taxing state becomes too small to support the duty to collect a use tax under the Due Process Clause."); *see also ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 331 (1982) (O'Connor, J., dissenting) (expressing "dismay" at the Court's decision to rest its holding on due process grounds because doing so "may deprive Congress of the authority necessary to rationalize the joint taxation of interstate commerce by the 50 States.").

Certainly, the public interest favors staying enforcement of a sweeping and unprecedented congressional mandate pending opportunity by this Court and others to fully consider the positions of all parties outside of the hurried context of a preliminary injunction motion.

Although the Court has determined that certain provisions of the PACT Act appear to run afoul of due process constraints, that does not mean the entire statute is unconstitutional.  Indeed, for the reasons stated, the Court finds no constitutional impediment to enforcement of the nonmailability provisions.  The Supreme Court has cautioned that "'[a] court should refrain from invalidating more of the statute than is necessary. . . .  [W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of th[e] court to so declare, and to maintain the act in so far as it is valid.'"  *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)(quoting *Regan v. Time, Inc.,* 468 U.S. 641, 652 (1984)).  Thus, "'[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.'" *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976)(per curiam)).

The Court finds that the unobjectionable portions of the PACT Act may be enforced, including PACT Act's prohibition on use of the mails to deliver cigarettes and smokeless tobacco.

## **CONCLUSION**

Accordingly, upon finding for the reasons stated above that plaintiffs have established a likelihood of success on the merits of their Due Process Clause claim, a threat of irreparable injury, and that the public interest favors injunctive relief, it is hereby:

ORDERED that enforcement 15 U.S.C. § 376a(a)(3), (4) and §376a(d) (requiring delivery sellers to comply with "all state, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific state" and requiring the payment of state and local excise taxes and tax stamps to be affixed to products in advance of the sale) is stayed pending trial or other disposition of the merits of that claim; and further

ORDERED, that all other requirements of the PACT Act are deemed by this Court to be enforceable against plaintiffs.

SO ORDERED.

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: July 30, 2010